UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROY RADAKOVICH, as representative on behalf
of former shareholders of Pump Engineering, LLC,

    Plaintiff,

                                    Case No. 11-13443

v.

                                  HON. DENISE PAGE HOOD

ENERGY RECOVERY, INC.,

    Defendant.

_____/

## OPINION AND ORDER REGARDING
## MOTIONS FOR PARTIAL SUMMARY JUDGMENT
## and
## SCHEDULING ORDER

**I.    BACKGROUND/FACTS**

This matter is before the Court on cross-motions for Partial Summary Judgment[1] filed by both parties. Briefs, including supplemental papers, have been filed and a hearing held on the matter.

On August 8, 2011, Plaintiff Roy Radakovich ("Radakovich") filed a Complaint against Defendant Energy Recovery, Inc. ("ERI") alleging: Breach of Escrow Agreement (Count I); Breach of Duty of Good Faith and Fair Dealing (Count II); and Unjust Enrichment (Count III), pled in the alternative. The Court dismissed the

---

[1] E.D. Mich. LR 7.1(b) provides a party must obtain leave of court to file more than one motion for summary judgment in a case.

Unjust Enrichment claim (Count III) in an order dated September 30, 2012. (Doc. No. 15)

ERI entered into an Agreement and Plan of Merger ("Merger Agreement") with Pump Engineering, LLC ("Pump Engineering") on December 21, 2009. (Comp., ¶¶ 4, 22) ERI is engaged in the business of making energy recovery devices used with desalination equipment. (Comp., ¶ 19) Pump Engineering was engaged in the business of developing turbo chargers and pumps commonly used with desalination equipment. (Comp., ¶ 15) Turbo chargers produced by Pump Engineering allow reverse osmosis desalination plants and other liquid based industrial processing plans to be more efficient and require less energy for operation. (Comp., ¶ 16) Radakovich was named the "Company Representative" on behalf of the former owners of Pump Engineering. (Comp., ¶ 23) As a result of the Merger Agreement, Pump Engineering was merged into a wholly owned subsidiary of ERI and its existence ceased, with certain exceptions, "all the property, rights, privileges, powers and franchises." (Comp., ¶¶ 24-25) After the merger, ERI referred to its subsidiary as Pump Engineering, Inc. ("PEI").

In May 2009, prior to the merger, Pump Engineering entered into a contract with Hyflux Hydrochem PTE, Ltd. ("Hyflux") for Pump Engineering to provide Hyflux certain turbo charges and equipment that met certain efficiency to be delivered

in certain dates. (Comp., ¶¶ 17-18) By virtue of the Merger Agreement, ERI acquired the rights in and control over the performance and completion of the Hyflux contract. (Comp., ¶ 26)

As part of the consideration for the Merger Agreement, ERI agreed to place in an Escrow Account a sum of money (the "Earn-Out") to be distributed to Radakovich based upon a separate Contingent Payment Escrow Agreement (the "Escrow Agreement"). (Comp., ¶ 27) The Earn-Out was to be distributed to Radakovich upon satisfaction of certain Milestone performance achievements related to the Hyflux contract. (Comp., ¶ 28) Pursuant to the Escrow Agreement, ERI agreed to deliver the sum of Three Million Five Hundred Thousand Dollars ($3,500,000) to an agreed upon Escrow Agent who in turn would pay the Earn-Out upon achievement of certain Milestones under the Hyflux contract. (Comp., ¶¶ 32-33)

The Escrow Agreement provided for three Milestones, two of which are at issue in this lawsuit. (Comp., ¶ 34) Milestone 1 was to meet certain efficiency requirements set forth in section 7.1 of the Hyflux contract, without Hyflux imposing liquidated damages. (Comp., ¶ 35) Upon meeting the Milestone 1 requirement, Radakovich was to be paid $1,300,000. (Comp., ¶ 37) Milestone 2 was to meet certain delivery terms set forth in section 7.2 of the Hyflux contract, without the imposition of liquidated damages by Hyflux. (Comp., ¶ 38) Upon satisfaction of

Milestone 2, Radakovich was to be paid $1,200,000. (Comp., ¶ 40)

Radakovich asserts that ERI breached the Escrow Agreement because ERI did not reasonably meet the requirements of Milestones 1 and 2. (Comp., ¶¶ 45-63) Radakovich claims that he has no way of knowing whether the efficiencies were ever met since ERI did not allow Radakovich to participate in the efficiencies testing and did not provide Radakovich with raw test data. (Comp., ¶ 55-56) Radakovich asserts that ERI repeatedly agreed to extend the time for delivery and that no penalty should have been assessed for the delayed delivery dates because Hyflux agreed to the delays. (Comp., ¶¶ 57-64) Radakovich alleges that despite the lack of basis for the penalties issued by Hyflux, ERI did not contest these penalties because Radakovich, under the Escrow Agreement, paid for the penalties instead from the amount Radakovich could have received from the Earn-Out if Milestones 1 and 2 were met. (Comp., ¶¶ 64-67) Radakovich claims that ERI chose to provide an unlawful gain to Hyflux since ERI could do so at no expense. (Comp., ¶ 67) Radakovich alleges that ERI breached the Escrow Agreement by utilizing its position of control to preclude Radakovich from obtaining the necessary resources to meet efficiencies and by verbally extending delivery dates without properly amending the Hyflux contract in writing which resulted in unnecessary penalties issued by Hyflux. (Comp., ¶¶ 70-72)

In his motion for partial summary judgment, Radakovich seeks judgment in his

favor on the breach of contract issue as to Milestone 2 only in Count I, the breach of duty of good faith and fair dealing as to Milestone 2 in Count II, and dismissal of ERI's affirmative defenses. ERI seeks partial summary judgment in its favor on the breach of contract claim in Count I as to Milestones 1 and 2 and the breach of duty of good faith and fair dealing in Count II as to Milestone 1.

## II. ANALYSIS

### A. Summary Judgment Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary

judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Breach of Contract, Count I

#### 1. Interpretation of Contract

A breach of contract claim under Delaware law must meet the following elements: 1) the existence of a contract, whether expressed or implied; 2) a breach on an obligation imposed by the contract; and, 3) the resulting damage to plaintiff. *Pritchett v. I/O Repair, Inc.,* 2013 WL 1750888 *4 (Del. Comp. Pl Apr. 22, 2013). The parties acknowledge the existence of the written Escrow Agreement, meeting the first element.

The ultimate goal in interpreting a contract is to determine the shared intent of the parties. *In re Mobilactive Media, LLC,* 2013 WL 297950 * (Del Ch. Jan. 25, 2013) Delaware adheres to the objective theory of contracts. *Id.* The court must look to the most objective indicia of that intent–the words found in the written instrument. *Id.*

The court ascribes to the words their common or ordinary meaning and interprets the words as would an objectively reasonable third-party observer. *Id.* A disagreement between the parties as to the contract's construction does not suffice to render it ambiguous. *Id.* A contract will be deemed ambiguous only if its language is susceptible to two or more reasonable interpretations. *Id.*

### 2. Milestone 1

ERI seeks summary judgment on the Milestone 1 claim in Count 1. Radakovich claims there are genuine issues of material fact as to Milestone 1 and ERI is not entitled to judgment on this claim.

The Merger Agreement provides that portions of the Contingent Cash Consideration set forth on Exhibit B shall be released from the Contingent Payment Escrow upon the achievement of applicable Milestones set forth in Exhibit B. (Merger Agr., ¶ 2.11) "The determination of whether any Milestone has been achieved shall be determined by [ERI] in its reasonable discretion." (Merger Agr., ¶ 2.11) The Escrow Agreement in ¶ 3(h) provides that Radakovich "shall have the right to dispute whether [ERI] used its reasonable discretion to determine whether such Milestone was achieved ..." (Escrow Agr., ¶ 3(h)) Contingent Cash Payment 1 means $1,300,000 if Milestone 1, as defined in Exhibit B, is achieved. (Appx. I, p. 2) Exhibit B provides:

**Exhibit B - Milestones and Contingent Cash Consideration**

>Capitalized, undefined terms in this Exhibit shall have the meaning ascribed to such term in the Hyflux Purchase Order Terms and Conditions dated as of May 26, 2009 (the "PO").
>
>Milestone 1 to be Achieved to Release Contingent Cash Payment 1
>
>Successful attainment of the average efficiency performance guarantees set forth in Section 7.1 of the PO without the imposition of any Performance Liquidated Damages as defined in that Section and receipt of all Factory Acceptance Test Certificates.
>
>Within thirty (30) days after the achievement of the above Milestone 1, if so achieved, Contingent Cash Payment 1 shall be released from the Contingent Payment Escrow to the Company Representative for the benefit of the Company Unit Holders. ...

(Appx. I, pp. 4-5) Section 7.1 of the Hyflux PO provides:

>7.1 The average efficiency of the twenty-five (25) tested turbo-charger units during Factory Acceptance (FAT) shall be as offered by the Supplier for the three (3) duty points nominated in the particular specifications at two tenth percent (0.2%) negative tolerance.
>
>Individual turbo charger performance can have a maximum negative tolerance of three-tenth percent (0.3%)
>
>Despite having a negative efficiency which exceeds three-tenths percent (0.3%), the turbo charge is still to be shipped. Supplier commits to work another rotor assembly within thirty (30) days until it meets Supplier's guaranteed points.
>
>For any shortfall in the efficiency after the thirty (30)

> days period, Performance Liquidated Damages shall be imposed and calculated on a per unit basis as further described in the following paragraph. ...

Hyflux PO, § 7.1

ERI asserts that it is undisputed that the delivered turbo charges did not meet the Performance Guarantees of the Hyflux Contract. ERI refers to the Statement of Undisputed Material Facts ("UMF") document it submitted which sets forth the evidence from discovery. (Doc. No. 49, UMF Nos. 3, 5, 9, 11, 17, 18, 21, 22) Radakovich did not submit any dispute to these statements. PEI's engineers Kevin Terrasi and Dr. Ying Ma conducted the FAT test, with Hyflux witnesses present. *Id.* The test results objectively indicated that PEI failed to meet the efficiencies. *Id.* ERI asserts that it was within the bounds of "reasonable discretion" provided in the Escrow Agreement in determining that PEI did not successfully meet Milestone 1.

In response, Radakovich claims there are questions of fact on the Milestone 1 efficiency issue. However, Radakovich does not specifically dispute that the FAT tests were performed nor that the efficiencies required were not met. Rather, Radakovich argues that Radakovich, or his representatives, were not allowed to participate in the tests and were purposely not told when the actual test dates were so that they would not be able to attend. Radakovich further argues that ERI was obligated under the Escrow Agreement to cooperate with Radakovich and his

9

representatives to effectuate the intent of the Merger Agreement.

Radakovich argues that ¶ 12.11 of the Merger Agreement provides "Further Assurances" that the parties would use reasonable efforts to effectuate the Merger Agreement and other ancillary agreements. (Merger Agreement, ¶ 12.11) However, Radakovich has not pointed to any terms of any agreement (other than the general "Further Assurances" provision), including the Merger Agreement, the Escrow Agreement or any appendices, which provides that Radakovich or his representatives must be present at the FAT tests. The provision involving Contingent Cash Payment 1 of $1,300,000, only provides "Milestone 1, as defined in Exhibit B, is achieved." (Appx. I, p. 2) Exhibit B expressly provides that Milestone 1 is achieved upon successful attainment of the average efficiency performance guarantees set forth in Section 7.1 of the Hyflux PO, which provides 0.2% or 0.3% negative tolerance. Radakovich does not submit any evidence to show that these test results were inaccurate and he does not allege that these test results were fraudulent. As noted, no provision or terms of any agreement, including the "Further Assurances" provision, provides that Radakovich or his representatives, must be present at the FAT tests. Any reasonableness requirement on ERI as to determining whether Milestone 1 is achieved is tempered by Section 7.1 of the Hyflux PO. Radakovich agreed to this provision in Exhibit B of Appendix I to the Escrow Agreement.

ERI has submitted sufficient evidence to support its claim that Milestone 1 was not achieved. Radakovich has not provided evidence to create any genuine issues of material fact to rebut ERI's evidence that Milestone 1 was not achieved as required by Section 7.1 of the Hyflux PO. Radakovich's argument that he or his representatives did not participate in the FAT tests is without merit since there are no provisions under any agreement that Radakovich must be present at the FAT tests. Radakovich has not shown that the FAT tests were not performed as required under the Hyflux PO (to which he was not a party). Summary judgment will be entered in favor of ERI on the breach of contract Milestone 1 claim in Count I.

### 3. Milestone 2

Radakovich argues that he is entitled to partial summary judgment on his breach of contract claim as to Milestone 2 in Count I. ERI responds that there is no dispute that under the Hyflux PO, the turbo charges were delivered four to seven months after the specified dates in the Hyflux contract. Although the delivery dates were not met, Hyflux did not waive the late delivery penalties under the Hyflux contract.

> Milestone 2 to be Achieved to Release Contingent Cash Payment 2:
>
> On-time delivery and performances of the Supply in accordance with the Delivery Schedule, as those terms are defined in SECTION 7.2 of the PO, without the imposition of any liquidated damages as set forth in that Section. This Milestone payment will be disbursed after all successful deliveries.

(Appx. I, p. -5) Section 7.2 of the Hyflux PO provides:

> 7.2 The Supplier shall ensure that the Supply is delivered and preformed on or before the date(s) as stipulated in the Delivery Schedule or such dates as may be adjusted by the Client. Save for the reasons beyond the control of the Supplier, the Supplier shall be liable to pay the Client liquidated damages as follows. ...

(Hyflux PO, § 7.2)

There is no dispute that the delivery of the turbo charges was late. However, the PO provides that the dates may be adjusted. (Hyflux PO, § 7.2) Radakovich submitted evidence that Hyflux and PEI, ERI's subsidiary, agreed to the later dates. ERI does not dispute that later dates were agreed to. ERI argues that since there was no subsequent written agreement to the later dates, Section 7.2 was not met and that Milestone 2 was not achieved.

Delaware law provides that subsequent changes to a written agreement may be waived or modified by course of conduct. *Pepsi-Cola Bottling Co. of Ashbury Park v. Pepsico, Inc.,* 297 A.2d 28, 33 (Del. 1972). Radakovich submitted evidence that ERI management believed there should be no penalties because the delivery was timely and agreed to by Hyflux. (Pelegrin Dep., pp. 44-45, 95) Radakovich also submitted evidence that ERI only paid what it considered a "minor" $130,000 delivery penalty. (Doc. No. 41, Ex. 20, Blanco email) Although Radakovich submitted evidence that PEI, ERI's subsidiary, and Hyflux agreed to the later delivery dates, a penalty was

charged. As to whether the "minor penalty", as argued by Radakovich, is sufficient for ERI to reasonably determine that Milestone 2 was not achieved, this issue is an issue for the jury. Reasonableness is a question of fact to be determined by the finder of fact. *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity,* 624 A.2d 1199, 1206 (Del. 1993).

ERI also argues that because Milestone 2 was contingent on the achievement of Milestone 1 Radakovich's claim as to Milestone 2 must also be dismissed. However, there is no provision in any of the agreements that Milestone 2 is contingent on Milestone 1. The issue of whether ERI breached its obligation to determine whether Milestone 2 was achieved, in light of the "minor" penalty amount, is not subject to summary judgment at this time.

### C. Breach of Good Faith and Fair Dealing, Count II

ERI seeks summary judgment on the breach of duty of good faith and fair dealing claim in Count II as to Milestone 1. Radakovich seeks judgment in his favor on the breach of duty of good faith and fair dealing in Count II as to Milestone 2.

An implied covenant claim is not a tort, but a contractual claim. *Wood v. Baum,* 953 A.2d 136, 143 (Del. 2008). An implied covenant of good faith and fair dealing claim is a limited gap-filling tool to infer contractual terms to which the parties could have agreed had they anticipated a situation they failed to address. *Nemec v. Shrader,*

91 A.2d 1120, 1126-28 (Del. 2010). It is not a "free-floating duty" or "a substitute for fiduciary duty analysis." *Longergan v. EPE Holdings, LLC,* 5 A.3d 1008, 107 (Del. Ch. 2010). "Fair dealing" is a commitment to deal "fairly" in the sense of consistently with the terms of the parties' Agreement and its purpose. *Gerber v. Enterprise Products Holdings, LLC,* 67 A.3d 400, 418-19 (Del. Supr. 2013)(quotation omitted). "Good faith" does not envision loyalty to the contractual couterparty, but rather faithfulness to the scope, purpose, and terms of the parties' contract. *Id.* at 419. The analysis turns on the contract itself and what the parties would have agreed upon had the issue arisen when they were bargaining originally. *Id.* The implied covenant should not be used to give plaintiffs contractual protections that the plaintiffs failed to secure for themselves at the bargaining table. *Aspen Advisors LLC v. United Artists Theatre Co.,* 843 A.2d 697, 707 (Del. Ch. 2004).

Because the Court finds in favor of ERI as to the Milestone 1 issue in Count I, ERI is also entitled to judgment in its favor as to the breach of good faith and fair dealing as to the Milestone 1 issue in Count II. As noted, there is no provision in any contract between Radakovich and ERI that Radakovich or his representatives must be present at the FAT tests. An implied covenant cannot be used to give Radakovich contractual protection that was not bargained for in the contract. *Aspen Advisors,* 843 A.2d at 707.

Radakovich argues he is entitled to judgment as to Count II on the Milestone 2 issue. ERI responds that there is no requirement that any penalty assessment can be contested.

There is no term in any of the agreements as to what amount of penalty would govern under Milestone 2. Radakovich has submitted sufficient evidence to show that the amount of late shipment penalty assessed was "minor," in the amount of $130,000, in light of the amount at issue of $1.2 million under Milestone 2. There remain genuine issues of material fact under Count II that ERI exercised good faith and fair dealing when it determined that Milestone 2 was not met.

### D. Affirmative Defenses

Radakovich argues that he is entitled to summary judgment on ERI's affirmative defenses because ERI failed to provide a Rule 30(b)(6) witness for ERI"s support of its affirmative defenses. In response, ERI argues that Radakovich solely relies on one poorly worded question and answer exchange at ERI's several hours long 30(b)(6) deposition to demonstrate that ERA has no evidence to support its affirmative defenses. ERI asserts no interrogatories were served regarding ERI's affirmative defenses. ERI claims that there were no specific questions of ERI's 30(b)(6) witness regarding ERI's affirmative defenses during the eight hour deposition. ERI has offered to allow Radakovich an extra opportunity to depose its witnesses regarding ERI's affirmative

15

defenses. Radakovich asserts the offer is too late.

At the Rule 30(b)(6) deposition of Borja Blanco, Radakovich's counsel questioned Mr. Blanco as to affirmative defenses nos. 2-9:

> Q. That's my point. I don't want you to guess. For purposes of the record, can you go through two through nine and tell me if you know of any facts underlying any one of these points. Again, don't guess I just need to know?
>
> A. Just reading this and telling you exactly I know what's referring to. No.

(Blanco Dep., p. 126).

Radakovich's brief fails to set forth the elements and the law required to show whether the affirmative defenses have been met or not. Judgment is denied without prejudice as to the affirmative defenses.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment (**Doc. No. 41**) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment (**Doc. No. 48**) is GRANTED IN PART and DENIED IN PART as more fully set forth above. The Milestone 1 breach of contract claim in Count I and the Milestone 1 good faith and fair dealing claim in Count II are DISMISSED. The Milestone 2

breach of contract claim in Count I and the Milestone 2 good faith and fair dealing claim in Count II REMAIN.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike **(Doc. No. 74)** is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to File Supplemental Brief **(Doc. No. 79)** is GRANTED.

IT IS FURTHER ORDERED that the following schedule governs this matter:

>Final Pretrial Conference Date: **May 19, 2014, 2:00 p.m.**
>All clients and representatives with authority to settle must appear.
>
>The proposed Joint Final Pretrial Order pursuant to LR 16.2
>must be submitted by: **May 12, 2014**
>
>Trial Date: **June 10, 2014, 9:00 a.m.**

<u>S/Denise Page Hood</u>
Denise Page Hood
United States District Judge

Dated: March 28, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 28, 2014, by electronic and/or ordinary mail.

<u>S/LaShawn R. Saulsberry</u>
Case Manager